The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Thank you. Be seated. We shall start with an admission, Mr. Hovey, when you approach the podium. It is my great pleasure to move the admission of Patrick Charles Hovey to the bar of this court. He is a member of this bar in good standing with the highest courts of California and the District of Columbia. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. Mr. Hovey has been my law clerk for the past months and has conducted himself with distinction. So it is my pleasure to move his admission and I invite Judge Lurie to decide whether or not to grant the motion. I must consult my colleague, Judge Hughes. Will we grant the motion? Yes. We do. Thank you. Will you please approach the clerk who will administer the oath. Please raise your right hand. Do you solemnly swear or affirm that you will support yourself as an attorney and counsel at this court, uprightly and in accordance with the law, and that you will support the Constitution of the United States? I do. Thank you. Welcome to the bar of the United States Court of Appeals for the Federal Circuit. Thank you very much, sir. Thank you. Welcome to the bar, Mr. Hovey. There we are. All right. We will continue with the scheduled arguments for this morning. The first argued case is number 16-1047, ICON Health and Fitness against Optane Fitness. Ms. Maynard. Thank you, Judge Newman. And may it please the Court, Deanne Maynard for ICON Health and Fitness. This was a routine patent case. Hard fault, to be sure, but that's typical in patent cases, especially competitor-on-competitor suits. There were reasonable arguments on both sides. Although the courts ultimately sided with Octane, that's not enough to make a case exceptional. Ms. Maynard, the court did more than just ultimately side with the other side. The court said she presided as a judge for over 22 years. And the arguments here were in no relation to what the patent disclosed and covered. She said this stands out as a particularly and unusually weak case in the merits. She did say that, Your Honor. But that conclusion is after she assesses the substantive strength of the arguments. And that substantive assessment has both legal error and is based on clearly erroneous factual findings. And I'd like to start addressing the substantive strength of ICON's arguments, if I may. They were, Your Honor, based on the text of the statute, the specification, and this Court's case law. The District Court believed erroneously, and states in its fees opinion, that ICON's argument depended on proving that a stroke rail consists of a limitless number of parts. But the District Court agreed with ICON that that structure was a multi-part piece. It says so in its summary judgment opinion. And in its first fees decision, it said, the specification clearly indicates it is comprised of more than one part. Linguistically, there's no difference between more than one part and one or more parts. That's not the reason ICON lost the stroke rail element. So that is clear error on the judge's part and an error of law. ICON's argument did not depend on that. Significantly, Octane conceded for more than nine months in this litigation that its Q47 accused product had a stroke rail. How can it be an exceptionally weak argument when the other side concedes for nine months the element is present? The District Court also found, wrongly found, that the merits, ICON's arguments regarding the means for connecting element were exceptionally weak and not based on the patent. In fact, Your Honor, they were based on this Court's precedent, as this Court is well aware, often a dispute, very reasonable disputes in means plus function claims about what is the function and what is the structure. And here ICON relied on the text of the limitation and the text of the specification which expressly identified the structure that performed the noted function. Word for word, Your Honor. So if I could point the Court to column 4 of the patent. So first I should start with the limitation at issue, which is on page A50, and it's limitation 1D. And it says, means for connecting each stroke rail to the frame such that linear reciprocating displacement of the first end of each stroke rail, and on and on. That exact phrasing, that exact phrasing, such that linear reciprocating displacement of the first stroke rail is present in column 4. But it wasn't, isn't your client asserting this claim against something that would occulate rather than linear? Yes, Your Honor, and I can address that point. But the primary assertion that ICON made with respect to this element, Your Honor, was that the means for connecting need only convert linear reciprocating displacement to an elliptical path. It didn't need to cause it. Now, to be sure, this Court disagreed with that conclusion, but it did so, Your Honor, only by reading in additional structure. So in this Court in B. Braun said when you look to the specification and whereas here the function that's expressly identified is expressly identified by a particular structure, that's the end of the inquiry. You don't look elsewhere. And here, word for word, the claim limitation language is set forth at line, column 4, lines 26 to 30. The present invention includes connecting means for connecting each stroke rail, 66 and 68, to frame 12 such that linear reciprocating displacement of first end of each stroke rail and 66 and 68 results in displacement of the second end and so on. It's exactly the same claim language in the limitation I just read you. And then it goes on to say the structure is the crank. This Court disagreed with that, Your Honor, and I understand that. And we're not here to re-argue the merits. I'm only arguing that ICON's argument was grounded in the text of the limitation and the text of the specification. But as you said, that issue was decided earlier, and that relates to the reasonableness of your continuing argument, and the district court found it was unreasonable. I'm sorry. The district court found it was unreasonable to continue to argue what you had lost before. She did say in her summary judgment opinion, she said that, but she recognized that the doctrine of equivalence argument was not foreclosed, Your Honor. So this isn't a case like a Justicam where it was clear that there could be no infringement after the claim construction and the patentee persisted. In fact, that's not the basis, Your Honor. That's not the basis for the fees award here. So the basis for the fees award was that our argument was not grounded in the claim language and the specification, but it clearly is. And this Court's opinion on the merits the first time around expressly recognized. And at page A-3174, which is the slip-up of the opinion, this Court's opinion on the merits, this Court recognized, quote, that second connection is not specifically identified as a means for connecting. In other words, this Court recognized that although the crank was the structure expressly identified, it also went on and looked at and relied on another cardiac pacemers, relied on cardiac pacemers. I'm just saying this was a typical common patent dispute, Judge Lurie, not unusual, not extraordinary, not rare, very common, like many that this Court sees every day. What is the structure? What is the function? And the district court... I might agree with you about the claim construction, but the district court also made a number of findings of that about the manner in which it was litigated and the filing in California and the fact that this patent wasn't commercialized and the like. And so it suggests to me at least that she thought that this wasn't typical of every patent case. This is not... Even though this is two competitors, it's not two competing products. It's a patent that was never commercialized. Is that... How does that alter the analysis, at least for an abuse of discretion standard? Judge Hughes, if you were to agree with us that these were run-of-the-mill regular patent arguments that were not extraordinary or weak, in fact, reasonable arguments that just didn't prevail, which is not enough, I think you would have to remand at least because it colored the district court's view of the conduct she found. But I don't think you have to remand because I think the conduct she found does not warrant an exceptional case finding. It is almost identical to conduct this Court has recently rejected as sufficient in the checkpoint decision. So the e-mails here, the e-mails, nothing improper about the content of the e-mails. If they had been sent by the decision-maker, which they weren't. They were sent by a salesman of a subsidiary. But even if they had been sent by the decision-maker who decided all they did was express eagerness at suing a competitor to enforce patent rights, which this point in court and checkpoint said there was nothing wrong with that motive, and express confidence that ICON would prevail. Nothing about abusive... This pales in comparison to the e-mails in checkpoint where the general counsel said we're going to make you bleed and put you into bankruptcy. Nothing like that. Nothing at all. Nothing about causing them economic harm. Can I go back to your notion that this isn't different from typical patent cases? I mean, I get that, but what I struggle with a little bit is all those typical patent cases arise from a regime in which it was incredibly hard to get attorney fees beforehand. And so we don't have a baseline yet of what is the new standard. So how do we know whether this complies with the new standard or not by comparing it to pre-octane cases? Well, even comparing it to cases that this Court has decided since the Supreme Court's decision, Your Honor, this is not rare and extraordinary. This is not a... There's no evidence of a multitude of strike suits settled for nuisance value. There's no evidence of extraordinary conduct lying to the court. There's no evidence. And in the checkpoint, the evidence, as I say, was we are going to, you know, inflict economic harm. There's no evidence to that effect here. And yet this Court held that didn't amount to bad faith. So even looking at that, but if this Court were to find that this kind of conduct eschews a competitor suing a competitor on a patent where there are perfectly reasonable arguments on claim construction, can, you know, post hoc, looking back on it, you can say, well, you lost, you lost, and now I'm going to look at these things like your choice of venue, which this Court regularly sees venue disputes, the attitude of your pre-suit investigation, which ironically here because we did so much, she questioned it. What is a competitor supposed to do? A successful competitor in the marketplace, not surprisingly, often has a large patent portfolio, often looks, monitors what its competitors are doing, and if it sees a new competitor in the marketplace who seems to be copying their invention, sues them. Well, I get your arguments, but isn't the problem that the Supreme Court largely gave that decision to the district courts and not to us, given the extremely deferential standard of review we have? No, Your Honor, because it is an abuse of discretion review for the whole circumstances, but the Supreme Court made clear in Highmark that legal error is still legal error, it's reviewed de novo, and you can't, you can't, and if the Court is to base its exercise of discretion on clearly erroneous factual findings, which it did here repeatedly because it misstates our experts' testimony, it misstates the inventor testimony, these things, it says we made arguments we didn't make. This Court is to review it, and as the Supreme Court said in the Kurzsag decision, courts see reasonable arguments all the time that come to fees, and if a district court awards fees, that's an abuse of discretion and it should be reversed. That's what's happened here. This is an ex ante, this is a perfectly reasonable suit to bring. It didn't win, but that's not the test, that's not the test, and you're going to over-deter, over-deter suits if you award on facts like these. There is no showing of any improper conduct. The Court speculated and made findings of things for which there is no proof, and fees are not warranted in this situation. You ask about the linear displacement, Judge Lurie, I would like to address that, if I may, really quickly, because this Court held that our position was reading linear out of the claim, but with respect, ICON's claim construction for that limitation was based on the text of that limitation, which included both the word displacement and the word path, and under this Court's case law, when two words are in the same limitation, you usually do not read them to mean the same thing. Our experts said linear displacement is a term of art, and the definitions, the definitions that we submitted in support of that show that it is a term of art, and it distinguishes it from other kinds of displacement like angular displacement. So one of the definitions is like A1160, and it defines displacement. When a body moves from one location to another, we measure the linear displacement in a straight line from the starting position A to the ending position B, regardless of the path taken. That was the construction that we proposed. And it goes on, say, a body rotating about an axis experiences angular displacement. So angular displacement is like from my shoulder here, if I move my arm out from my body, from the perspective of my shoulder, this is angular displacement. From the perspective of my wrist to my hip, it's linear displacement. The use of the word linear was clarifying. It was distinguishing it from other types of displacement. It did not mean path, and our expert never said it meant path. That's a misquotation. But it looks as if that was the particular limitation that got the District Court's attention, that that was such a strained construction that it should have made an impression once it was determined that it was, in fact, arcuate and not linear. I missed the beginning of your question, Judge Newman. I apologize. To understand what really seemed to make an impression on the District Court seemed to be this limitation of linear, that the construction that was being offered when it plainly was not linear was just so extreme that this case stood out from other patent cases. That's only one of many reasons she gave, Your Honor. But my point is that even if that were the... My overall point is she said she was considering a totality of circumstances. I think if this Court pulls out even one, but certainly if you pull out multiple of her reasons, you would have to at least remand. But I think all of her reasons fall. My point on linear displacement, Your Honor, is that the linear displacement definition that we offered was supported by the text of the patent, by our expert, and by the extrinsic definitions that we offered. That is a commonplace mode of claim construction. It's certainly not extraordinarily weak. I think it's a very good argument. And it does not warrant fees. If I may, I'd like... Yes, we will save you rebuttal time. Thank you so much. Mr. Telsche. Thank you, Judge Newman. May it please the Court. In 2012, when this Court affirmed the District Court's decision on the merits in full but denied fees, our client was out $1.5 million, roughly. In view of the District Court's order that stands now, our client with cost through appeal is still going to be out about $1.5 million, even with her award. Do we appreciate that award? We, of course, do. But we're still out $1.5 million, which means the net effect is our client has gotten no fee award. This occurred through a procedural anomaly, which we explained to the Court in our reply brief, in which we got no briefing before the District Court judge on the denial of fees under the 120 patent and the denial of fees on fees, which resulted in our client getting basically no fee award in this case at all. It occurred through two errors of law. On fees on fee... You went into your cross-appeal. Yes, Your Honor. But there was a stipulation there where you sort of waived them. So, Your Honor, again, that's legal error. This has never been briefed to the Court. We've now briefed it to this Court. There is no Court that we're aware of, and this Court hasn't ruled on it. The Federal Circuit's law governs here, but we're not aware of any case from this Court that discusses whether waiver can occur where we have a fee petition in our general claim for relief, not as to the 120 patent, and we did not expressly waive. And this Court has not ruled on that issue. So one patent goes away, the case continues. This Court has not ruled, and this is an opportunity for this Court to clarify what its position on the law is. We're not aware of any Federal Circuit case. They haven't cited one. So this Court needs to say... Why wouldn't it be a waiver of fees for this patent that was stipulated to dismissal? The U.S. Supreme Court says in order for there to be a waiver, there has to be an intentional relinquishment. If you look to the Eighth Circuit law, which is the region from which this came... Well, can we look to the stipulation first? It says any and all claims related to that patent. Why isn't that a very broad release that includes attorney fees? That issue has been discussed in many cases, including the Craig case that we cited to the Court. Language just like that, where it doesn't say we're giving up attorney's fees, is not enough. The Court has to look to the intent of the parties. And because we didn't get to brief the issue to the Court, it never considered a letter that we wrote two weeks earlier where we said we were reserving that existing... I don't remember the Craig case. Is that one of those 1983 cases? No, it's not. I mean, I know you cited some 1983 cases and you cited an AJA case, but those seem to me to be completely inapposite, because the fee regimes in those areas favor an award of fees, where that's not what the regime were operating under here. So Raby-Clark, to my knowledge, is not a case in that area. It didn't deal with any kind of a presumption. What the Court found is when one claim was dismissed... What Court? Excuse me? What Court? I'm sorry, what part? What Court? Oh, it's Eighth Circuit, Your Honor. There's no decision from this Court that deals... And what fee provision? Your Honor, I apologize. I did not know that off the top of my head. It's not a patent case. I didn't want to get onto defending the main appeal. So going back to... Your opponent says this is a plain old ordinary patent case. They lost, but that doesn't mean there should be fees. So the District Court, in a 19-page opinion, has carefully analyzed all the evidence. I disagree. They suggest that her assessment of the strength of the case is a legal matter. It is not. This Court in SFA v. Newegg specifically said that the Court's assessment of strength is entrusted to her sound discretion. The footnote that they're referencing from the Highmark decision, Highmark says all aspects of a fee determination or exceptionality determination are under the clearly erroneous standard. In Icahn's opening argument, I'm not sure that I once heard them say where the judge committed clear error in her finding. I've read many of this Court's decisions following Octane, and this Court has held that it is a highly deferential standard. And absent this Court finding clear error, this Court has not reversed. In this particular case, I can understand that if there was a claim construction, a fee ruling based on claim construction, and that went up, and this Court disagreed with the claim construction, that as a matter of law, that might be reversed. That's not this record. This Court has affirmed the finding in full. Not only did it affirm, but as to the C-channel argument, this Court called it without merit. It's a matter of black letter law that where you say linear reciprocating... I mean, I don't think you're addressing your friend's argument specifically. There do seem to be at least misapprehensions by the district court of what your friend was arguing, and particularly about the lines that something about there would, you know, could be an endless number of parts for the whatever you're calling it, the slide or what they argued. This Court found that. In your opinion, this Court found that they were arguing one or more parts means an infinite number of parts, and in this Court's opinion in 2012 affirming it, this Court recognized the district court's argument in that regard and actually acknowledged it. That's in the record. This Court has also found it, and it's just as a matter of English language. One or more means one, ten, twenty, a thousand. And the district court found that a patent where one end goes in a straight line in a C channel and the other goes in an elliptical path. And so the invention was the linkage. And their position on the merits is that their linkage can be one, ten, a thousand parts. One or more means that. The district court rejected it. She found it unreasonable. It is an unreasonable position where your invention is a specific thing, where an examiner finds the reason I'm giving you a patent is it goes up and down in a straight line, and there's this C channel that causes that. We got their inventor to admit in deposition that, yes, you need the C channel to cause the up and down. My invention's up and down, and you need a C channel. And so there is no evidence to suggest that the up and down motion or the C channel was not part of the invention. That's all that's disclosed in the 710 patent. Our client doesn't have anything remote to it. So their position, when you add their positions up, you don't need a straight line movement, even though that's what the examiner said was the reason for allowance. That's all that's disclosed. We don't need straight line movement. We don't need a C channel. And our stroke rail is any limitless combination of parts. And I would ask myself, what could my client do? They've won. But if they're trying to avoid a patent where their position is that my invention is a limitless number of parts, which this Court found, it's right in the Federal Circuit's opinion from 2012, how could Octane avoid a lawsuit where they say the 710 patent covers a limitless number of parts and linear movement and a C channel is not required? That's basically every elliptical machine known to mankind. That was their position. And so, no, was this a rare case? I'm not aware of cases where not one of their people at ICON even knew how our client's machine worked. Not one of them. The inventor, the in-house counsel, not one person knew how our machine worked. Our machine, which was covered under a different patent with a completely different linkage system, didn't have straight line movement, didn't have C channels. When you looked at the rocker link, the rocker link pivots down here. There's another pivotal connection to the actuator casting, which is what they called our stroke rail. And it went up and down in an accordion fashion. I mean, I'm not here to say this is a design patent case where you can look and tell. But when I'm sizing up a case, one of the first things I do is I look and say, well, here's what we have. Here's what they got. This looks bizarre that they're going to claim this as infringement. Then you look to the patent, the claims. We didn't have one element, literally, other than foot rails and other than a frame, which all ellipticals have. We didn't have, literally, or under the doctrine of equivalence, a stroke rail. We didn't have, literally or under the doctrine of equivalence, the means for connecting, which was the C channel. We didn't even have, literally, the means for selectively varying, literally. She found there was an equivalence issue. Your friend says that their expert said that the linear and the arcuate motion were equivalent and every other limitation was literally met. Isn't that enough to support a case that seems to be a more or less typical overreach, perhaps, of a patentee? In every patent case, Your Honor, somebody can find an expert that's going to cite. So every case has an expert. Their expert disagreed with their own inventor. The inventor said my invention is up and down in a straight line in a C channel and we had it's undisputed. We had nothing like it. When it comes to arcuate motion, I mean, they keep calling it a slight arc. It's not a slight arc. It's a rod that pivots. That would do an entire circle. It's an arc. I mean, our client couldn't have made their invention any more different than the 710 patent. And when we talk about how rare it is, it took them 270 hours. This patent you can read in an hour and you can figure out that it's up and down in a straight line in a C channel. It took them 270 hours to find the 710 patent. If you think about what is 270 hours, that is a lawyer working seven hours a day, 20 business days a month. So a lawyer worked approximately two months to find the 710 patent, which was a 10-year-old patent that they didn't even know about. And the principles of operation are different. And our client, the only reason they sued, the only reason they sent these lawyers on this 270 hour go-find-whatever-you-can is because our client was competing against them successfully with an award-winning machine. And at the end of the day, we're all here to believe that it was a reasonable case where they had a 710 patent. I have the inventor admitting it doesn't work. Customers didn't want it. It was too expensive. That patent covers an award-winning machine that's licensed under a different patent. When you look at that patent, you can see our client's linkages shown right there. And somehow the red flags didn't go off. If I was icons management and somebody said, yeah, we have this 10-year-old patent, it doesn't work. We've never used it. And we're going to say that's the basis for a claim against Octane, the small startup company who's taking market share with a completely different product. And we're going to say that that case doesn't stand out. Now, at the end of the day, the district court's decision is grounded firmly in the claim language, the specification, the inventor himself admitted what the invention was, and there's no dispute that we didn't have anything like it. I mean, the inventions couldn't be any different. And so, but at the end of the day, as this court's recognized in many decisions, I've read a lot of the decisions from this court affirming few awards, the court's found it's a highly deferential standard. It's clearly erroneous, all aspects of it. Even the court's assessment of strength. This court affirmed her in full. All that remains on this record, which admittedly is not the normal record when it comes to this court, but here this court's affirmed everything. It was to the district court's sound discretion to assess the merits of this case and based on this totality of facts, which are a lot, it was a bad case. It shouldn't have been brought. Does that mean it's Rule 11? No. That's not the standard. This court has also found the new standard substantially lowered the threshold for getting fees. And if this case doesn't qualify, I'm not sure what would. We literally didn't have any element of the core, we didn't have the stroke rail, literally. We didn't have the means for connecting, literally. We didn't have the means for selectively varying, literally. Two of them not even under the doctrine of equivalence. And again, I would ask myself, what would Octane do? If their position is my linkage, my patented linkage is any combination of parts and the point of novelty as found by the examiner, admitted by the inventor, doesn't exist according to them and their expert who contradicts the inventor, they say that straight line and C channel doesn't matter, and my invention is any collection of parts. That reads on every machine. If that's what the coverage of the 710 was reasonably, they could have sued anyone. And yet our client didn't even come close to using what they had. So, but the district court has issued a 19 page, very carefully worded opinion. She incorporates by reference in footnote 1 her prior claim construction, her prior ruling. This court has affirmed, this court itself found that their argument as to the C channel was without merit. And it is. Black letter law says that if the function is linear suffocating displacement, you've got to have structure that corresponds. The patent is absolutely clear. What causes it is the C channel. Even more remarkable in this case is that the inventor admitted it. The inventor said, yeah, what causes the up and down movement is the C channel. And it's undisputed we have nothing like that. A rocker link isn't close to a C channel. The standard is insubstantial difference. Was it unreasonable to contend all of these things were insubstantial? Yes, it was. We would ask this court to consider the errors of law because it's as if we have no fee award. I mean, our client battled this for nine years and we're still out 1.5 million. We've never had a chance to brief the issues to the district court on fees on fees in 120. And she committed clear air when you say fees on fees, what portion of the litigation do you mean? Fees on fees, your honor, under the case law means all aspects of the case where we're pursuing fees. Do you mean the litigation about the proper standard before this court in the Supreme Court? Yes, your honor. That's how can that be at all exceptional when it was our precedent and it took the Supreme Court to overrule it. That's precisely the error of law, your honor. Gene, the U.S. Supreme Court says that once you find the trigger and if you look at Gene, once you find the trigger that means you're entitled to fees or the court has discretion. I want to overstate the case, but you should be getting fees for pursuing your fees. Otherwise, you defeat the purpose of the statute. So even this court in their sense did not hold that you have to show. I mean, there's plenty of precedent saying the courts have discretion to apportion fees for parts of the case they find weak and parts they don't also. Under Gene, your honor, I would respectfully disagree. Under Gene, the U.S. Supreme Court says that once you prove that the underlying case was exceptional, then we should have gotten our fees and it would be up to the district court to explain why we wouldn't get all of our fees. I think that's the law under Gene. And what Gene says, your honor, what Gene says is that, for example, the district court would be within its discretion to not award fees if we went for, like, categories of fees and didn't get them. Deduct that. Here, she denied all fees. And we do believe that's a violation of Gene and we also think there was abuse of discretion because we didn't get to brief any of the issues. Thank you. Thank you, Mr. Taylor. We'll save you the rebuttal on the cross-appeal. Ms. Maynard. Thank you, Judge Newman. The Supreme Court's made very clear that this has not a loser pays statute. And counsel is re-arguing the merits. These were reasonable arguments that ICON asserted on the merits. On the stroke rail, Octane conceded for nine months they have a stroke rail. On the adjustable element, ICON survived summary judgment. Dispute of fact, the district court found on element E. On the means for connecting, ICON had a strong argument based on the text of that limitation and the specification that the structure was limited to the crank. This Court recognized, recognized in its opinion that it was looking elsewhere and adding in structure that was not specifically called out by the specification. Different opinions from this Court suggest different ways to go on that, Your Honors. That is a reasonable argument. And the literal dis the linear displacement argument, we had a strong argument based on the text of that limitation that displacement and path were not the same. I invite the Court to read the inventor testimony that he is referring to you about the C channel. What the inventor was asked, and it's at A332, I want you to assume that 76 is not attached to anything. It is floating in the air. When you adjust the length of 66, would that do anything to the elliptical path? And the inventor says, if you do that, you've got a pile of steel. I don't have a mechanism. He's not saying the C channel is essential to my invention. He's not saying the C channel. Something like that. Something like that. But that the C channel under ICON's construction, which is again the same discussion I was discussing, ICON had a strong argument, at least a very reasonable argument, that the C channel was not required by this limitation because the limitation was about connecting in such a way. And the District Court added words, added words to that limitation by adding to cause. And counsel has said it's clear it causes and this Court agreed with it. And so I understand that we lost on the merits but losing on the merits is not enough. The Supreme Court made that very clear. And that's all that happened here. That's all that happened here. The inventor, the inventor called out to, the inventor saw King's Machine in the marketplace and suggested to in-house counsel that it looked like something that he had invented. Suggested in-house counsel look at it. It's a two lawyer general counsel's office. They're not patent lawyers. They hired expert counsel. Expert counsel spent a long time. They bought the machine. They hired a consulting expert. They came back and orally advised the general counsel that here is the basis for infringement and we think we have a reasonable basis to go forward with it. It's a perfectly proper, reasonable pre-suit investigation just like in Checkpoint. Oral opinions are fine. This Court has never held that more is required. Would you care to comment on the cross-appeal? Really two quick points, Your Honor. The stipulation couldn't be any clearer. It says any and all claims of both parties with respect to the 120 patent. The District Court found that they waived under the Eighth Circuit precedent, fining is a waiver. Whether you look at it as a matter of law or a matter of fact, they waived this claim. The Ray case he was referring to, Judge Hughes, is a civil rights case. Civil rights, the presumption is very different. Presumption of fees here, that's not the case. On the Feruson's issue, the District Court made really clear in response to their request to file a motion for reconsideration, I have great discretion to decide the quantum of the fees that I find it was really reasonable for Icahn who had prevailed before me under the long-standing standard, prevailed in the Federal Circuit under this Court's long-standing standard on fees, to defend that decision in the Supreme Court and not to shift the fees on that. So I decide not to shift the fees on that. You don't have to decide whether or not you have to find it separately extraordinary or not because the District Court made clear that she was deciding it in her discretion to set the appropriate amount and she indicated they've still been awarded a substantial amount of fees. We would request that you reverse. Thank you, Ms. Maynard. Mr. Telsher, you get the last word just on the cross-appeal. Two minutes, please. So, Your Honor, as to the pre-suit investigation, one of the benchmarks of patent law is that you don't get to submit a declaration that says I talked to my lawyers for a certain amount of time and then they told me it was okay. The minute you do that, that's advice. That sounds like the main appeal. I'm sorry? That sounds like the main appeal. Oh, I'm sorry. I'll go right to the cross-appeal. Fair enough. So on the cross-appeal, the first thing I would ask of this Court is to look carefully that we didn't get to brief any of the issues on 120 and fees on fees. And I would think it is abuse of discretion once the Court became aware of the anomaly that occurred. Her order to our reading still is that she was awarding us fees and all that we had to do was submit our time and the reasonableness. That's what we did. In their reply to that, they took on the issues of 120 waiver and fees on fees. We never got a chance to respond to that. In our view, that's abuse of discretion. We think as a result of that abuse of discretion, there were errors of law that should be briefed to the District Court in the first instance. The Eighth Circuit law, we cited to the Court Cody. But if we agree with her on the law, why would we care if there's more briefing? If you agree with her on the law, then I would say that to me sounds like harmless error because you've had our briefing. So I would agree that if you're going to say that exceptionality is required for the fees on fees stage, which is what she found, and then when she ultimately said their conduct was reasonable, that's the same thing as it not being exceptional. If you agree with that proposition, then I would agree that you don't need to remand. We think that was an error of law. We think it is in direct violation of the Supreme Court's Jean decision. As to the 120, this Court has not ruled on what happens when one claim goes away, and we did not express a relinquished fees. I'm very sympathetic, Your Honor, when you say all claims. I understand why you're here saying, well, why wouldn't that cover attorney's fees? We've cited to this Court many decisions in our brief that deal with that issue that say, unless you specifically waive fees, which we didn't, then it's not covered. Silence is not enough. So it should be remanded to the District Court to determine whether we intended to waive fees. And my final point would be, I don't know how anybody could think that we were trying to waive $125,000 in fees applied to the 710 patent. And that's the net result here, is that, for example, no matter if the 120 patent was in the case or not, the 710 patent was in the case the whole time. She deducted half of our fees for the venue transfer work that she found was unreasonable. We clearly didn't intend to relinquish that. So there is an anomaly. We think it's based on an error law, and we would ask for a remand on that issue. Thank you for your time. Okay. Thank you. Thank you both. The case is taken under submission.